UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY S. TURNER,

        Plaintiff,                    Case No. 1:13-cv-249

v.                                           Honorable Janet T. Neff

P. JENSEN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants Embry, Huss, Norwood, and Prelesnik. The Court will serve the complaint against Defendants Jensen, Shreve, Shroad, and Watkins.

**Factual allegations**

Plaintiff Gregory Turner is a state prisoner incarcerated at the Baraga Maximum Correctional Facility, though the events about which he complains occurred while he was incarcerated at the Ionia Correctional Facility (ICF). He sues the following employees of ICF, in their individual/personal capacities only: Correctional Officers P. Jensen, Craig Shreve, and D. Watkins; Sergeant P. Shroad; Deputy Wardens Erica Huss and N. Norwood; Resident Unit Manager (unknown) Embry; and Warden John Prelesnik (also identified as "ICF Warden, Doe" or "Doe" in the complaint). (*See* Attach. to Compl., docket #1-1, Page ID#7.)

According to the allegations in the complaint, on March 18, 2011, Plaintiff complained that prison staff at ICF were serving breakfast to inmates more than 14 hours after serving dinner, and were "rushing" prisoners out of the "chow hall." (*Id.*, Page ID#29.) The next day, "gang members" in the prison threatened to kill Plaintiff because Jensen had told them that Plaintiff was "telling on them." (*Id.*) Plaintiff informed Jensen that he wanted to be "locked up" for protection, but Jensen refused, stating, "I don[']t care if they kill your black-ass, that's why I told them that! That will get you out [of] the block, go eat or go back to your cell." (*Id.*, Page ID#30.)

Plaintiff apparently went back to his cell and took the outer plastic cover off of a cable cord. He folded the wire cord and put it into his coat pocket. On the way to lunch, Plaintiff approached Jensen in front of the gang members, and asked Jensen to confess that he had lied about Plaintiff. Jensen told Plaintiff to leave. Plaintiff then drew part of the wire out of his pocket. An officer ordered Plaintiff to drop the wire, but Plaintiff refused. Officer Watkins kicked Plaintiff in the back of his leg, causing him and the wire to fall to the floor. Officers Jensen and Shreve pulled

Plaintiff to his feet and rammed his head into a door window. They held Plaintiff in the hallway and "beat" him on his "face, head[,] back, shoulders, neck, and about his body, while calling [him] a stupid black niggar." (*Id.*, Page ID#32.) Jensen and Shreve "continually" beat Plaintiff and slammed his head onto the wall, doorjams, and windows, while making "racial slurs." (*Id.*, Page ID#32-33.) During this time, Sgt. Shroad was holding a camera, recording the assault. Watkins also observed the assault by Jensen and Shreve, but did not intervene.

At some point, Plaintiff's hands were placed in handcuffs and leg irons were placed on his legs. Jensen and Shreve tightened the cuffs, cutting Plaintiff's skin, and took Plaintiff to another unit, ramming him into doors and beating him about his body along the way. They took him to a "dayroom" and "bashed" his head into a carrel, telling him to "pass on [to] the wor[l]d about what happens to niggars who threaten us." (*Id.*, Page ID#34.) Plaintiff fell, and Defendants pulled him to his feet by his cuffs and dragged him to the carrel, where they left him. Plaintiff claims that he did not "unduly" resist or fight the officers after Watkins kicked him in the leg. (*Id.*, Page ID#35.)

On or about March 24, 2011, Plaintiff appeared before a hearing officer (Marutiak, who is not a Defendant in this action), ostensibly on charges of disobeying a direct order and possession of a weapon/contraband. (*See id.*, Page ID#25-26.) Jensen, Shreve and Watkins falsely asserted that Plaintiff threatened and resisted officers even after he was escorted out of the unit. Marutiak determined that the video of the incident had been lost, and accepted their reports. Plaintiff contends that Jensen, Shroad, and Shreve conspired with another prison official to destroy the video, and conspired to lie in their own defense. Apparently, Plaintiff was found guilty of some

of the charges, as he was punished with 10 days of confinement in detention and 10 days of loss of privileges. (*Id.*, Page ID#54.)

Defendants Jensen and Shreve allegedly threatened to assault or kill Plaintiff if he filed any grievances or lawsuits on them. In April 2011, after Plaintiff filed a grievance regarding the assault, Jensen ripped it up and returned it to him, stating that he or his friends would "stomp" Plaintiff's "simple minded black ass" if he filed any more grievances, because they "kill niggars . . . and no one cares." (*Id.*, Page ID##18, 23.) Plaintiff claims that Defendants Jensen, Shreve, Watkins, and Shroad are part of a "clan" that is allowed to assault African-American prisoners without fear of repercussion. (*Id.*, Page ID#47.) Plaintiff asserts that Jensen has been sued by other prisoners for assaulting them. He allegedly boasts about "mak[ing] money off prisoner lawsuits," he claims that the Michigan Attorney General can "handle" such lawsuits, and he stated that "[he] and his buddies [can] handle smart ass niggars." (*Id.* Page ID#73.)

Plaintiff purports to assert claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and state law. Plaintiff claims that Defendants' conduct violated his constitutional rights, violated the foregoing statutes, and constituted assault, battery, ethnic intimidation, libel, slander, and/or defamation of character under state law. Plaintiff further contends that Defendants Embry, Huss, Norwood, and Prelesnik ("Defendant Supervisors") are liable because they allowed or acquiesced to the actions of the other Defendants. Defendant Supervisors were aware that Jensen, Shreve, and Shroad have racist tendencies and assault prisoners, but they refused to take any action to protect prisoners or to discipline their subordinates. Defendant Supervisors also were aware of or responsible for a "custom" at ICF that: (1) allows Jensen, Shreve, and Shroad to assault African-American prisoners and commit racist acts without fear of repercussion; (2) allows ICF staff to

falsely assert that a prisoner has been resisting as a means to justify an assault; (3) allows ICF staff to falsify reports on prisoners; and (4) in the context of a misconduct hearing, requires ICF staff to accept the word of other staff members. Plaintiff wrote to Defendants Norwood, Prelesnik, and Huss about the assault and the loss/destruction of the video, but they allegedly refused to take any disciplinary action.

As relief, Plaintiff seeks a declaratory judgment, compensatory and punitive damages, and an injunction requiring that he not be confined in any facility where Defendants are located.

### **Discussion**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

The Court concludes that Plaintiff's allegations Defendants Jensen, Shreve, Shroad, and Watkins suffice to state a claim against them. With respect to Defendants Huss, Norwood, Embry, and Prelesnik, however, Plaintiff does not state a cognizable federal claim.

I. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Huss, Norwood, Embry, and Prelesnik, other than that they were generally aware of a history of misconduct by the other Defendants, and failed to properly supervise or control their actions. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As the Sixth Circuit has repeatedly emphasized:

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). In short, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not alleged any active unconstitutional conduct by Defendants Huss, Norwood, Embry or Prelesnik. He does not allege that they participated in, encouraged, authorized, or knowingly acquiesced in the specific incidents involving the other Defendants, and their failure to respond to Plaintiff's complaints about those incidents does not state a claim. *See Shehee*, 199 F.3d at 300. Furthermore, even if Defendant Supervisors violated their duties under state law or prison policies, § 1983 does not provide redress for a violation of a state law, *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994), and a defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the

level of a constitutional violation, *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. For the foregoing reasons, therefore, Plaintiff fails to state a § 1983 claim against Defendants Huss, Norwood, Embry and Prelesnik.

    II.    <u>Section 1981</u>

Plaintiff also asserts a claim under 42 U.S.C. § 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). It "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). To state a claim under § 1981, a plaintiff must plead, among other things, that "he belongs to an identifiable class of persons who are subject to discrimination based on their race" and that "the defendant intended to discriminate against him on the basis of race." *Amini*, 440 F.3d at 358; *see Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (holding that a violation of § 1981 requires purposeful race discrimination). Plaintiff's complaint fails to state a claim against Defendant Supervisors under §1981 because it does not contain specific factual allegations that they intentionally discriminated against him.

    III.    <u>Section 1982</u>

Plaintiff's claim against Defendant Supervisors under 42 U.S.C. § 1982 fails for similar reasons. Section 1982 prohibits racial discrimination relating to certain interests in real and personal property. *See* 42 U.S.C. § 1982; *United States v. Brown*, 49 F.3d 1162, 1166–67 (6th Cir. 1995). A § 1982 claim, like a claim under § 1981, requires that a plaintiff plead racial animus. *Moniz v. Cox*, No. 11-1790, 2013 WL 216070, at *4 (6th Cir. Jan. 22, 2013); *see Allen v. Louisville City Police Dep't*, 972 F.2d 346, No. 91–6277, 1992 WL 168097, at *2 (6th Cir. July 17, 1992) ("It is well-settled that one must plead and prove racial animus to succeed on a section 1982 claim." (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968); *Greene v. City of Memphis*, 535 F.2d 976 (6th Cir. 1976))); *see also Patulski v. Twp. of Stronach*, 41 F.3d 1507, No. 94–1431, 1994 WL 659192, at *2 (6th Cir. Nov. 22, 1994) ("[I]n order to state a claim under § 1982, one must allege intentional racial discrimination. [Plaintiff's] claim is meritless because he does not contend that the Township's actions were motivated by race."). Plaintiff does not allege that Defendant Supervisors intentionally discriminated against him on account of race.

IV. Sections 1985, 1986

Likewise, Plaintiff fails to state a claim against Defendant Supervisors under 42 U.S.C. §§ 1985, 1986. To succeed on a claim brought under 42 U.S.C. § 1985(3), "a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). The plaintiff must allege that "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th

-

Cir. 1999); *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993); *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it.").

Plaintiff has not alleged any facts indicating that Defendant Supervisors were involved in a conspiracy, much less that they were motivated by race or class-based discriminatory animus. Because Plaintiff has failed to state a claim against them under § 1985, his claim against them under § 1986 also fails. *See Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990) ("Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986.").

      V.    State Law

Plaintiff also asserts claims against Defendant Supervisors under state law. The Court has discretion to exercise supplemental jurisdiction over Plaintiff's state law claims, but the Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction under these circumstances. *See Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998); *see also* 28 U.S.C. § 1367(c)(3) (providing that a court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). Consequently, as to Defendant Supervisors, Plaintiff's state law claims will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the claims against Defendants Huss, Norwood, Embry and Prelesnik under 42 U.S.C.

§§ 1981, 1982, 1983, 1985, and 1986 will be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The claims against the foregoing Defendants under state law will be dismissed without prejudice. The Court will serve the complaint against Defendants Jensen, Shreve, Shroad, and Watkins.

An Order consistent with this Opinion will be entered.


Dated: June 25, 2013                    /s/ Janet T. Neff
                                        Janet T. Neff
                                        United States District Judge