UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GREGORY TURNER,

        Plaintiff,                      Hon. Janet T. Neff

v.                                                Case No. 1:13-cv-249

P. JENSEN, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Partial Summary Judgment</u>. (Dkt. #25). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.

## BACKGROUND

Plaintiff Gregory Turner is a state prisoner incarcerated at the Baraga Maximum Correctional Facility, though the events about which he complains occurred while he was incarcerated at the Ionia Correctional Facility (ICF). He initiated the present action against the following ICF employees in their personal capacity only: Corrections Officers P. Jensen, Craig Shreve, and D. Watkins; Sergeant P. Shroad; Deputy Wardens Erica Huss and N. Norwood; Resident Unit Manager (unknown) Embry; and Warden John Prelesnik.

The following allegations are contained in Plaintiff's complaint. On March 18, 2011, Plaintiff complained that prison staff at ICF were serving breakfast to inmates more than 14 hours after

serving dinner, and were "rushing" prisoners out of the "chow hall." The next day, "gang members" threatened to kill Plaintiff because Jensen had told them that Plaintiff was "telling on them." Plaintiff informed Jensen that he wanted to be "locked up" for protection, but Jensen refused, stating, "I don[']t care if they kill your black-ass, that's why I told them that! That will get you out [of] the block, go eat or go back to your cell."

Plaintiff returned to his cell where he removed the outer plastic cover from a length of cable cord. Plaintiff then folded the wire cord and placed it in his coat pocket. As he was later walking to lunch, Plaintiff approached Jensen in the presence of the gang members, and asked Jensen to admit that he had lied about Plaintiff. Jensen told Plaintiff to leave at which point Plaintiff withdrew the wire from his pocket. Another officer ordered Plaintiff to drop the wire, but Plaintiff refused. Watkins then kicked Plaintiff in the back of his leg, causing Plaintiff and the wire to fall to the floor. Jensen and Shreve then pulled Plaintiff to his feet, rammed his head into a door window, and then "beat" him on his "face, head[,] back, shoulders, neck, and about his body, while calling [him] a stupid black nigger." Jensen and Shreve "continually" beat Plaintiff and slammed his head into the wall, doorjams, and windows, while making "racial slurs." During this time, Sgt. Shroad was holding a camera, recording the assault. Watkins also observed the assault by Jensen and Shreve, but did not intervene.

At some point, Plaintiff was secured with handcuffs and leg irons. Jensen and Shreve tightened the handcuffs, cutting Plaintiff's skin, and transported Plaintiff to another unit, in the process beating him and ramming him into doors. They took Plaintiff to a "dayroom" and told him to "pass on [to] the wor[l]d about what happens to niggers who threaten us." Plaintiff fell, but Defendants pulled Plaintiff to his feet by his handcuffs and dragged him to a nearby location, where they left him. Plaintiff claims that he did not "unduly" resist or fight the officers after Watkins kicked him in the leg.

On or about March 24, 2011, Plaintiff appeared before a hearing officer, ostensibly on charges of disobeying a direct order and possession of a weapon/contraband. Jensen, Shreve and Watkins falsely asserted that Plaintiff threatened and resisted officers even after he was escorted out of the unit. The hearing officer determined that the video of the incident had been lost and accepted the statements by Jensen, Shreve and Watkins. Plaintiff contends that Jensen, Shroad, and Shreve conspired with another prison official to destroy the video and further conspired to lie in their own defense. Plaintiff was found guilty and punished with 10 days of confinement in detention and 10 days of loss of privileges.

Defendants Jensen and Shreve threatened to assault or kill Plaintiff if he filed any grievances or lawsuits on them. In April 2011, after Plaintiff filed a grievance regarding the assault, Jensen ripped it up and returned it to him, stating that he or his friends would "stomp" Plaintiff's "simple minded black ass" if he filed any more grievances, because they "kill niggers . . . and no one cares." Defendants Jensen, Shreve, Watkins, and Shroad are part of a "clan" that is allowed to assault African-American prisoners without fear of repercussion. Jensen has been sued by other prisoners for assault and boasts about "mak[ing] money off prisoner lawsuits." Jensen claims that the Michigan Attorney General can "handle" such lawsuits and stated that "[he] and his buddies [can] handle smart ass niggers."

Plaintiff purports to assert claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and state law. Plaintiff claims that Defendants' conduct violated his constitutional rights, violated the foregoing statutes, and constituted assault, battery, ethnic intimidation, libel, slander, and/or defamation of character under state law. Plaintiff's claims against Defendants Huss, Norwood, Embry, and Prelesnik have since been dismissed. Defendants Shroad and Watkins now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

# SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established

appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed

in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

As discussed above, Plaintiff's claims against Defendants Shroad and Watkins arise out of the March 19, 2011 incident begun when Plaintiff threatened Defendant Jensen with a weapon. While Plaintiff filed a grievance concerning this incident, and pursued the grievance through all three steps of the grievance process, this particular grievance fails to make mention of any involvement by Defendants Shroad and Watkins in the events in question. (Dkt. #26, Exhibit C). Defendants Shroad and Watkins have submitted evidence that during the relevant time period this is the only grievance Plaintiff has pursued through all three steps of the grievance process. (Dkt. #26, Exhibit B). Plaintiff has failed to respond to the present motion and, therefore, has presented no evidence demonstrating the existence of a factual dispute with respect to this issue. The Court concludes, therefore, that Plaintiff has failed to properly exhaust his claims against Defendants Shroad and Watkins. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Shroad and Watkins be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Partial Summary Judgment, (Dkt. #25), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 8, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge